**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Jasper Division

DEC 1 7 1998

| | | |
|---|---|---|
| CONSUMER PORTFOLIO SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | CV-98-P-2287-J |
| -vs.- | ) ) ) | |
| JEFF W. SANFORD, | ) ) | |
| Defendant. | ) | |

**ENTERED**

DEC 2 1 1998

## MEMORANDUM OPINION

The plaintiff, Consumer Portfolio Services, Inc., filed a Petition for Order to Compel Arbitration on September 8, 1998. The parties presented oral argument on the petition at the November 13, 1998 motion docket. At the close of argument, the court granted the plaintiff leave to file a supplemental brief with the court by November 17, 1998. Upon receiving the plaintiff's brief on November 17, the court took the matter under submission. After careful consideration, the court finds that the plaintiff's petition is due to be denied.

### Facts

On March 6, 1996, the defendant, Jeff Sanford, purchased a used Taurus vehicle from Doug Reid Auto Sales, Inc. (hereinafter the "dealership"). On the date of the purchase, Sanford signed two documents: (1) a Retail Installment Contract and Security Agreement, and (2) an Arbitration Agreement. The dealership assigned the contract to Consumer Portfolio Services, Inc. ("CPS"), who purchased the "contract" from the dealership. Sanford was to make monthly payments directly

to CPS.

As a result of the assignment of the contract, the dealership forwarded the sales documents relating to the Sanford transaction to CPS. However, the dealership did not send a copy of the Arbitration Agreement to CPS. Therefore, CPS apparently had no knowledge of any arbitration agreement signed by Sanford.

Approximately seven months later, in October of 1996, Sanford suffered a serious injury which rendered him unable to work. Sanford thereafter defaulted on his payments to CPS. Sanford allegedly began experiencing "rude, intimidating, harassing, and threatening" phone calls from CPS. Sanford contends that the phone calls attempting to collect the car payments caused him mental anguish, distress and other problems.

In May of 1998, CPS filed a collection action in state court against Sanford seeking the amounts owed under the contract. Sanford subsequently filed a counterclaim against CPS alleging invasion of privacy and intentional infliction of emotional distress. Sanford's counterclaim seeks $350,000 in damages.

During investigation of Sanford's counterclaims, CPS became aware for the first time of the Arbitration Agreement signed by Sanford. CPS immediately sought dismissal of the state court action and filed this case in federal court seeking an order compelling arbitration of the dispute under the Federal Arbitration Act, 9 U.S.C. § 2.

### Analysis

CPS asserts that the arbitration document signed by Sanford and the dealership covers the current dispute between Sanford and CPS because it was assigned along with the Retail Installment Contract and Security Agreement. While acknowledging that it is not a signatory to the Arbitration

2

Agreement, CPS nevertheless contends that it was an intended third-party beneficiary of the arbitration agreement because the dealership and CPS "clearly contemplated an assignment of the contract to CPS." Sanford contends that the Retail Installment Contract was the only contract assigned by the dealership to CPS and that there is no evidence that the Arbitration Agreement was part of that assignment. Sanford points out that the Arbitration Agreement does not specifically refer to or incorporate by reference the terms of the Retail Installment Contract or include an assignment provision. Assuming, arguendo, that the court does find the dispute subject to arbitration, Sanford argues that CPS has waived its right to arbitrate.

The Federal Arbitration Act, 9 U.S.C. § 2 et seq., states that an arbitration provision is enforceable if it is written and appears in a "contract evidencing a transaction involving commerce." In this case, there is no dispute that Sanford and the dealership entered into a valid arbitration agreement on March 6, 1996. There is also no dispute that the arbitration agreement is a contract involving interstate commerce. What is disputed, however, is whether the arbitration agreement can be enforced in the current dispute between Sanford and a non-signatory, CPS.

The duty to arbitrate is a contractual obligation. See AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643 (1986). As such, courts apply ordinary contract principles when interpreting an agreement to arbitrate. See Ex parte Jones, 686 So. 2d 1166 (Ala. 1996). A party cannot be forced to arbitrate a dispute unless that party has agreed to submit to arbitration. See A.G. Edwards & Sons, Inc. v. Clark, 558 So. 2d 358 (Ala. 1990). CPS seeks to enforce an arbitration agreement that, on its face, refers only to the "Dealer and Purchaser(s)/Lessee(s), whose names appear below." Unlike the Retail Installment Contract, the arbitration document does not mention anything about assignment to CPS. Similarly, the Retail

3

Installment Contract does not refer to the Arbitration Agreement. Instead, the assignment clause in the Retail Installment Contract contains no affirmative indication that the assignment is subject to any separate agreement even though there is a box within the assignment provision that can be marked to indicate such. Therefore, even though the documents were executed on the same day, there is no evidence that the arbitration agreement was intended to apply to disputes other than those between Sanford and the dealership. While it is true that the dealership assigned its *right to payment* to CPS, it did not assign all of its rights and duties relating to Sanford's purchase of the car. The dealership remains a suable entity with regard to claims that do not relate to payment. For example, Sanford could file suit under warranty or product liability theories in relation to the sale of the car. In that instance, it is unlikely that CPS would claim assignment of those claims. Instead, the arbitration executed by Sanford and the dealership would control, and the dispute would be subject to arbitration. The court finds that the Arbitration Agreement is only valid for claims arising between Sanford and the dealership. The plaintiff's petition is due to be denied.

Date: __Dec. 17__, 1998.

_____
Chief Judge Sam C. Pointer. Jr.

Service List:
George M. Neal, Jr.
C. Randall Johnson
Jerry O. Lorant
Haydn M. Trechsel